Please be seated. This is Sha'ola Terrell v. Alabama State University. Jamie Johnson is here for the appellate. Carol Ramondana Salam Jones is here for the appellee, Alabama State. And you may proceed, Ms. Johnson. Thank you. May it please the court. Thank you again for having me, even after last performance. I am here with my client. She goes by Shay Terrell. Ms. Terrell worked for Alabama State in its athletic department. Her position was Senior Associate Athletic Director. In addition to that position, she served as the Senior Woman's Administrator. The athletic department at the time had two Senior Associate Athletic Directors. One was responsible for internal operations. One was focused on external operations. Terrence Jones handled the external operations, whereas my client handled the internal operations. Terrence Jones had a salary $20,000 more than my client. In addition to her performance as the Senior Associate Athletic Director, I mentioned a Senior Woman Administrator position. That is not just a title. That is a required position. It is required by the NCAA. Some of the responsibilities as a Senior Woman Administrator involves handling the reporting to the NCAA. They must attend national meetings and conference meetings. It is an additional work function. And moreover, there is a line item for the Senior Woman Administrator in Alabama State's budget. It accounts for, depending on the year, a pay to whomever is the Senior Woman Administrator of either $10,000 or $15,000 per year for performance of those duties. Ms. Terrell never received the pay for her service as a Senior Woman Administrator. To be clear, that is the Administrator for Women's Sports. Is that the idea? When it is Women's Administrator, it is not a woman who is an administrator. It is the Administrator of Women's Sports? It is given to the highest ranking female employee in athletics, in the athletic department if I am saying that correctly. She does serve in that capacity as a liaison to the Women's Sports. It is like a sex-specific designation? Yes, Your Honor. The description of it is equal to what I am trying to articulate as  Let me ask you about that. I think the Jones counterpart is the strongest part of your case. I would appreciate if you would focus on that. They try to argue that your client was internal and he was external. That makes all the difference in the world. That is why they paid him $95,000 and why they paid her $75,000. What do you say about that? They are in an org chart. For instance, they would be laterals to one another. They serve simultaneously. Obviously, their day-to-day may be slightly different. She would be in charge of equipment in comparison to perhaps something external, fundraising or something. But the positions on an org chart are equal. As a matter of fact, she had more responsibilities than Mr. Jones if you look at their job descriptions. For instance, what was not required of Mr. Jones that she performed was serving on the department's executive leadership team and attending meetings hosted by the SWAC and NCAA. She served as primary manager of gender equality plans within the athletic department and implemented other inclusive programming to positively impact the student-athlete experience. She completed all cash advance requests, handled all reimbursement requests, prepared and processed all department purchase orders and bids, served as a liaison to the business and finance department. She completed preparation of all travel authorizations and purchase requisition orders. In addition to those, Ms. Terrell carried out duties, as we mentioned earlier, of the senior woman administrator. Not only did Mr. Jones receive significantly more than Ms. Terrell, gentlemen under her that reported to her were paid more. So she's in charge of... Who was that? Was that Roland Brown? There were two Mr. Browns, yes, Your Honor. There was Ron Brown and Lonnie Brown. Well, Lonnie Brown... I stand to correct myself. Lonnie Brown was paid the same, but he had less responsibilities and reported to her. They say Roland Brown's pay was a clerical error. Okay, Your Honor. Ron Brown received $95,000 and he received that for years. At some point, it's not a clerical error anymore, right? In their argument, they say his salary should have been $73,500, which would have been less than Ms. Terrell's, making sense because she had more responsibility and was his supervisor. But they did not make that change. They actually kept him at $95,000. And as we just pointed out, that wasn't for a month or two. It was for years and it was never corrected. Both Ron Brown and Lonnie Brown reported to Ms. Terrell. Yet, in Ron's case, he made $20,000 more. And in Lonnie Brown, he received the same. As you were focusing on the difference between internal and external, for internal relations, that explains the difference. That included academic services, business and finance, equipment division, strength and conditioning, operations, human resources, sports medicine, and compliance. And Ronnie Brown and Lonnie Brown, they each had oversight over one of those, whereas she had to oversee all of them. Alabama State attempts to defend their pay discrepancy here by arguing that they relied on a budget. The budget, however, was not followed. Ron Brown is one example of that. The budget showed he should make $73,500. He made $95,000. The budget compensated a senior woman administrator to either $10,000 or $15,000, depending on the year of the budget. That was never paid. Alabama State did not follow its budget. And in fact, as we've heard earlier today, Alabama State gave them self-discretion in determining a salary. They hired people at a negotiable salary. They did not follow a budget for a physician. Their explanation of relying on a budget is not believable. And it is certainly a jury question as to that believability. And in terms of Ms. Terrell and the budget, she was supposed to, according to the 2022 position, earn $76,500. She was never paid that amount. Third, Alabama State's salaries were discretionary, as I mentioned. Money was paid outside of the budget from different sources. Alabama State had discretion to award different positions. And in fact, on some of the hiring paperwork, and it's in the evidence before the court, it said, report to the VP if this salary needs to be changed. They gave certain people the authority to make changes to pay for the other items that were presumably on the budget. Let's go back to Mr. Jones. I want to clarify something. I know he was at 95, but I heard that he got promoted and received a raise to 95 when he became Deputy AD. Is that correct? He did get a raise and a new title, but his position, we would argue the evidence suggests, did not change. But what did it go from to go to 95? I do not know right off, Your Honor. I could not tell. But so he went up to 95 when he became Deputy AD, right? At the time he had that title, he was still serving as the external Senior Associate Athletic Director. It's our contention that his requirements and duties did not change to elevate the pay difference. Okay. And that even as a Deputy Athletic Director, Ms. Terrell still had more responsibilities, including not just the Senior Woman Administrator, but all the other departments. But he was Senior Associate Athletic Director of External Operations. Then he went to Deputy AD, which seems much broader than what his previous role was. In reality, the evidence suggests it was a title change. They did not hire an external person. He still assumed the same position. It was a title change, if you will. When did that happen? So just a couple of dates. She was hired in 2018, is that right? Let's see. Yes.  And when did this pay bump happen for Jones? I couldn't find it. If you couldn't find it, I probably wouldn't be able to. And I couldn't find either the date or when or what the salary was before he went to the 95. But maybe counsel on the other side of the issue can tell us. And our argument is... And I don't understand. You say it's just a title change. But it looked like he began then not just external affairs, but he assisted the AD with administration of the department, daily operations, administrative support. But it was a broader scope of responsibilities when he went to deputy director of athletics. Your Honor, those are responsibilities he had serving as the external senior athletic director. And he still had all those same things. Yes, Your Honor. And that his responsibilities did not increase. And even if they did, I would point the court to the fact Ms. Terrell was at all times serving as the senior woman administrator and not being paid. She did not receive the budgeted compensation for that position. Let me ask my timing question this way. Assume she was hired in 2018. Do you know whether Jones... No, Brown. Terrence Jones. Yeah, Jones.  Was making 95 at the time she was hired or did that happen after she was hired? I do not know that, Your Honor. During my break, I'll... Well, let me ask you this. It's my understanding from ASU's brief that when she applied for the position, the position was for $75,000. Okay. Is that right or wrong? That is my understanding. Okay. But that is not inclusive of the senior woman administrator position. So my point in reinforcing that is if Mr. Jones received the deputy title, deputy AD title, and let's assume he had an increase in responsibilities. We dispute that, but let's assume that. Ms. Terrell served as a senior woman administrator taking on additional duties and at no point received pay for that. And that is a recognized compensable position. It's in the budget that they so strongly rely on. I think I've run out of time or maybe I haven't. I'm not sure. Yep, you've reserved some time for rebuttal. Okay. Thank you. Thank you. And Ms. Salome Jones. Good morning. May it please the court. I'm Ramadana Salome Jones and I, along with Mr. Thomas, we represent Alabama State University in this case. So I want to go straight to the Equal Pay Act claim asserted by Ms. Terrell and kind of clarify some things that were mentioned relative to Terrence Jones. Terrence Jones wasn't just given a title change. It's in the record. I think it's documents 2724 and 2725. There was a job posted for Deputy Director of Athletics. Mr. Jones was hired for that position in 2018. A lot of things happened in 2018. Ms. Williams became the athletic director. Mr. Jones was previously employed in athletics at Alabama State University and that's where that previous senior associate athletic director position held. But that is not Alabama State's. Now you're saying he was promoted in 2018. I have that as August 2017. I'm sorry. I stand corrected. 2017 is when those changes were made. He became Deputy Director of Athletics. Yes. And I'm telling you this is just from online research. I couldn't find it in the record. Okay. Deputy Director of Athletics from August 2017 through October 2021. So he was already in that position. Do you know what it went from up to 95? What was he as senior associate AD? I don't know what his salary was as senior associate athletic director because I thought in dealing with this case we were only, how should I say this? The positions being compared were those of... Deputy Director of Athletics. We're talking about a salary of $95,000. Okay. It's never been alleged that he was receiving a salary of $95,000 for the senior associate athletic director. And she said she doesn't know what he made there and how much the bump up was. But it is a new position and we think it was August 2017. So he was already in that position when she was hired. Is that... Yes. Because if I'm not mistaken, Mr. Jones was a part of her hiring committee. So he was already a part. He was already the deputy athletic director at the time that Ms. Terrell was hired. And he has an actual job description which talks about him helping or assisting the athletic director in managing the entire athletics department. And so in contrast, Ms. Terrell did have some oversight of certification, academic advising, and sports medicine. And those divisions did have people that reported up to her. But Mr. Jones had oversight of the entire athletics department. He represented the university before the NCAA. He was in charge of reviewing all contracts, negotiating contracts. And so we're not... So into that vein, this is not a situation of we have one job, Ms. Terrell doing the same work as Mr. Jones. Not exactly the same, but it's pretty similar. They're both senior employees in the department. They both perform similar management responsibilities. They're both supervised coaches. They're both supervised sports programs. They both reported to the athletic director. When you compare their duties side by side, they're not exactly the same. But what's your response to my... They're not... That they're pretty similar. And then the fact that when the restructuring took place, their two positions were merged. That seems like that's the best evidence that the two jobs were pretty similar for comparator purposes. So there was a restructuring and they merged both of their positions under one position, right? So that seems to me the best evidence that their job duties were pretty similar because now you have one person doing the jobs that both of them were doing before the restructuring took place. So to the first question, at the time, we have to look at the time that both of these positions existed and the salaries that were assigned to both of these positions when they existed as two apart. And the case law says that you can't have substantially similar work where one person has greater responsibilities. And Mr. Jones did have greater responsibilities within the athletics department. Ms. Terrell was charged with making recommendations to Mr. Jones. Mr. Jones stood in the place of Ms. Williams. Ms. Terrell did not have that authority. There were broader responsibilities given to Mr. Jones. And so while they were both administrators within the athletic department, his had a broader scope. And that is the justification for why his position was budgeted and posted with a higher salary than Ms. Terrell. In addition to that, Ms. Terrell did... Can I ask you a quick question about that? The posting of the salary. So I think you established this with your conversation with Judge Hull. So he was hired into this position before she was hired in. Is that right? That's correct. What was the salary? Was there like an application process for his position? Yes, Your Honor. And what was the salary posting for that? It was $95,000. And for her position, there was some kind of application process and the salary was posted with $75,000? And hers had a range. I think it was $65,000 to $75,000. $65,000 being the top? Yes. Okay. And that is how the university process works. There's a request to fill vacancy where the hiring manager says, this is the job that I want to have. This is the duties. This is the qualifications. And then Human Resources posts this position also with the salary that the hiring manager has. Your reply brief says Jones interviewed Terrell, which was another indication to me that he must have been there when she came on board. Yes. Who was the interview committee? And do you remember anybody besides Jones or do you know? According to Ms. Terrell's testimony, she would cause the interview by Mr. Jones and Ms. Jennifer Williams. Okay. So he had to have been there before her.  Yes. And he was in the Deputy Director of Athletics position at the time. She was hired. Yes, Your Honor. Okay. So in addition to the Equal Pay Act and pay claim, Ms. Terrell also had a claim of retaliation stemming from the Equal Pay Act. She alleges that she. Before you get to that though, so the district court here said these are not the same positions. That's what the district court said. It looks like in your brief you argue that. You argue these aren't the same positions. But you also seem to argue that you've met the standard where even if they are the same positions, you had a non-sex-based reason to treat them differently. Correct. Did I understand that right? Okay. The issue about the notices for the positions having different salaries, that would go to the second issue, right, not the first issue? Correct. Okay. Correct. And these notices and these forms are completed before we even receive one application. So we don't know the gender of the person who is applying. It's supposed to be based upon the hiring manager is charged with establishing a salary based upon the job duties articulated on that request form. And so in the retaliation claim, Ms. Terrell claims that she was terminated for making complaints related to this senior woman administrator designation. And it has been labeled as a job or job duties. But this is just a designation that the NCAA allows universities to give to its most senior woman in the department. And there are no particular job duties assigned. There's no job posting. There's no salary attached to it. It's simply to go back to the senior woman. Well, they say there was a line item in the budget for that role of 15 in 2019 and 10 in 2020 and 2021. Correct. It showed senior woman administrator leadership role and had that. And she didn't get paid that. And it's in the budget.  And so we have an affidavit from Dr. Jason Cable that that line item was for things such as conferences and travel for the senior woman administrator if she wanted to go to, let's say, a gender equity conference being put on by the NCAA. That's what that's for, not to pay somebody. And there hasn't been any, you know, evidence in the record that anyone has been paid for this position. But more importantly, that someone else was paid for, let's just say, some additional designations that they may have in the department or, you know, I'm the point person for, let's say, student affairs. Nobody is getting paid for those things that are still encompassing your role in athletics. But when it comes to retaliation... Do we have any evidence that she did attend conference and travel and this line item in the budget was used? We don't know one way or the other. No, her only allegation was I was given the designation of senior woman administrator. Okay. And this is a position that all the SWAC schools have, right? For ensuring equitable treatment for women in intercollegiate athletics. I can't say that all SWAC schools have it because it's not something that's actually required. It's something that you'll find in the National Collegiate Athletic Association's literature as something that they would, you know, like to see schools have to ensure equity within the sports.  I mean, Jones didn't have that position though, right? So, I mean, one of the things the district court said, which the district court said, you know, the plaintiff is pointing out all of these things that she did that other people didn't do. But the question of the statute is whether you have the same job as other people, not whether you have different jobs. And this seems like an additional thing that she had to do that other people didn't have to do. It seems like it's a difference between the jobs. There is a difference to the job and again, it's still our position there's no evidence that she did anything as a senior woman administrator other than being said she is the most senior woman in the department. There's no evidence that she did anything. And the retaliation claim, of course, it was our argument that there was no evidence that she ever made any complaints during her time at Alabama State University. But the district court, in a light most favorable to Terrell, did accept her, you know, self-serving statements in her affidavit that she filed a complaint regarding the senior woman administrator pay sometime in September of 2021. She was now reappointed in September of 2021, I'm sorry, October of 2021, along with Terrence Jones. Upon the hiring of Dr. Jason Cable, he did make decisions to restructure the athletic department and included in those the two positions that reported directly to the athletic director at that time. And so it was our position that we had legitimate non-retaliatory reasons in non-reappointing both of those positions due to restructuring is not a new or novel idea. Ms. Terrell did the same thing when she was hired as the senior associate athletic director. Non-reappointed people who reported directly to her. Also, there was a Title IX claim of equal pay asserted by Ms. Terrell before the district court. It was our argument that, again, she had no proper comparators, but in a light most favorable to her, the district court said that there was a prima facie case. And, Honor, using this analysis under Title VII rule. Well, under the Title IX, I mean, I think the supplemental briefing conceded that Title IX is out because of what we said in that other case. I'll accept that, Your Honor. Well, I mean, I may be wrong, but I thought that was the position. So I just wanted to, if there was any question about whether that was applicable in this case, we did have arguments for that. Can you go back to Dr. Ronald Brown and you say he got $95,000 and they say he got it for years and it was never corrected and they failed to reduce his salary to $73,500. Now, his job was associate athletic director only for academic support. Correct. And it seems like he reported to Ms. Terrell, right? He did. And so he's making more than she is. Well, no, not to our knowledge. When I say our, not to the decision makers' knowledge of ASU. In that position, his salary was supposed to be $73,000. And to be honest, unfortunately, we didn't learn that he was still making a salary from a previous position with the $90,000 plus until this litigation. No, but she says you didn't correct it for years and it was never corrected. Right, and that's what I'm saying. Unfortunately, nobody knew until the discovery phase of this litigation because there's a letter in the record because Mr. Brown, Dr. Brown had an interim position in admissions and it carried a salary of $90,000 plus. When that ended, he received a letter from Human Resources copying the president saying, your interim appointment has ended. Your salary reverts back to your senior or your associate athletic director position salary of $73,000. During the discovery phase of this litigation, when we pulled the payroll records, the payroll department didn't make that actual change. And is he still there? No, Your Honor, he's not. He left and when? Dr. Brown was one of the people that Ms. Terrell reappointed upon her hire. So he left in 2018. Yeah, like November 6, 2018. Yes. And she made the decision to? She recommended that he be terminated, yes. Okay. And was the job eliminated or he was just terminated? He was terminated and I do think there was some restructuring to that position because we do not have that position. So if he was paid $95,000, he was under Ms. Terrell at the time he was paid the $95,000? He would have been. Did she complain about that? Hey, look, I've got somebody reporting to me, one of my subordinates, making $20,000 more money than I am. No, Your Honor. She didn't complain about it? You're saying it was a clerical error and nobody knew about it? Nobody knew. The only thing that we had, like I said, there was a letter from Human Resources telling him this is your salary as of this date. And it wasn't until the discovery phase of this case that we noticed that he was getting paid more. And, of course, Dr. Brown never told us my salary didn't change. I guess I wouldn't either. I see my time has expired. Thank you. Thank you, counsel. Ms. Johnston, you reserve some time for rebuttal? Yes, Your Honor. Thank you. There's nothing in the record that would indicate that Ms. Terrell knew that a subordinate was making more money than she was at the time that they were being paid, is there? It's my recollection that in her deposition testimony or perhaps her affidavit, she did complain about the pay discrepancy, in particular with Mr. Brown. During the time she was working there? Yes, Your Honor. But she was in charge. He was under her. That's right. And he made $95,000 and she made $75,000. And didn't she know the job was only supposed to be $73,000? I mean, she complained about him making more than her while she was an employee at Alabama State. Just to follow up on that, though, one weird thing about this is the Equal Pay Act requires this to be the same job. And so, I mean, he wasn't doing the same job she was. Like you said, he was underneath her, working below her. It's weird that he's getting paid more money, but it seems like that's not a comparator for you under the Equal Pay Act. With respect, it does, it's directly kind of on point. If she should, if she's performing more than kind of the purpose of the Equal Pay Act, if she's performing more job duties, has more job responsibilities, and he reports to her. I get it, but the Act says that it's for the same job. You know, that's what, so the district court made this point in its decision. It said a lot of your arguments really just point out that they're actually different. Like the women's position. I mean, I guess what do we do about the fact that the Act says you have to have somebody that did the same job? They were both administrative positions within the athletic department at Alabama State University. Does the Act say the same job, or does it say similar job? Similar. It does not require it to be identical. Okay. Okay, but let me go back to the timing. She comes aboard or is hired, I don't have the exact date, in October 2018, and she fires him right away. So they're not contemporaneous employees making different pages. He's gone as soon as she gets there. Are you speaking of Mr. Brown? Yes, Mr. Brown, Dr. Brown. I don't believe that it was that quick. He was not reappointed. He was actually terminated for falsification of records. Whatever he was terminated for, I'm trying to see if they served at the same time. Yes, Your Honor, they did serve at the same time. He reported to her. For two weeks? No, Your Honor, I believe it was substantially longer than two weeks. It wasn't an immediate termination. When was she hired? She was hired October 2018. What day in October 2018? One second. Because he's fired 11-6. And he was making that money by mistake. You don't know. Do I know her exact date? I'll find it for you. That's okay. I don't want to take your time. It wasn't. To be paid that over that long of a period of time is not a clerical error. Because my time is short, I wanted to point out on the budget, it doesn't say under senior woman administrator expenses as they seem to characterize this. It actually says compensation. So let me just on that retaliation claim. Yes, Your Honor, I was about to get to that. Go ahead. There isn't any evidence to contradict the legitimacy of the restructuring, is there? Yes, Your Honor. There is? Yes, Your Honor. The explanation that they gave that it was a restructuring, those positions were eliminated, is false. And evidence was presented to the lower court of that. The position of Deputy Terrence Jones' position that they claim was eliminated, part of this restructuring, was filled by Cyrus Ross, a male. They didn't eliminate the position. They merged the two. They merged the two positions in the one. No, Your Honor. Let me continue further. Ms. Terrell's position was also not eliminated, and they were not merged. Because, in fact, she was actually replaced by someone that she helped train that worked under her. I thought her job and Terrence Jones' job turned into one. That's incorrect. And the evidence in the record shows we filed with the lower court the publication by Alabama State from their website the new position with the same titles that they had. And we would contest that that's sufficient to survive for summary judgment. I'll ask you this. I'll make sure I understand. Yes, Your Honor. In the district court in both of these cases, they applied the McDonnell-Douglas three-step approach. But now we've got to apply the two-step. And that's a different burden. You don't look at pretext. You just look at the two factors there. And the district court's never done that in this record, right? That's correct. So it's really a different case now on appeal than it was in the district court. Yes, Your Honor. This court's opinion in Baker clarified. Yeah, we adopted the new approach that most people that it's only those two steps. Yes, Your Honor. And we also have intervening on the Title IX. A lot of change has happened. Yeah, since we've had this case. It's almost like there's a lot of employment litigation in this record. I don't know. Yeah, right. But we don't have a district court order shifting the evidence with regard to Baker standards. Under the affirmative burden on the employer to show one of those four exceptions. And here they're down to the last one or any other basis that's not based on sex. Yes, Your Honor. Okay. Thank you. Thank you. May I be excused? No, thank you. Thank you. Court is in recess until 9 o'clock tomorrow morning. Until 8 o'clock tomorrow morning. 8 o'clock. That's right. 8 o'clock. 8 o'clock.